FILED
SUPERIOR COURT
OF GUAM

2018 JUN -8 PM 3: 09

CLERK OF COURT

BY: _____

**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| HSIAO WEI YU,<br><br>       Plaintiff,<br><br>      vs.<br><br>MEI FEI LIANG, HELEN YU HU, and<br>HSIAO JUNG YU,<br><br>      Defendants. | ) CIVIL CASE NO. CV0087-16<br>)<br>)<br>)<br>)<br>) **FINDINGS OF FACT AND**<br>) **CONCLUSIONS OF LAW**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**INTRODUCTION**

This matter came before the Honorable Michael J. Bordallo on March 28, 2018 for a Bench Trial on Plaintiff's First Amended Complaint. Plaintiff Hsiao Wei Yu ("Hsiao Wei") is represented by Attorney Gary W.F. Gumataotao. Defendants Mei Fei Yu ("Mei Fei"), Helen Yu Hu ("Helen"), and Hsiao Jung Yu ("Hsiao Jung") are represented by Attorney Geri E. Diaz. The parties were ordered to submit their proposed findings of fact and any proposed conclusions of law, as deemed necessary by counsel. Having considered the testimony of the parties and the evidence presented, the Court hereby enters the following Findings of Fact and Conclusions of Law.[1]

---

[1] To the extent that a finding of fact should be deemed a conclusion of law or a conclusion of law deemed a finding of fact, it shall be so considered.

## BACKGROUND

This matter arises out of Plaintiff's February 4, 2016 Verified Complaint, which was subsequently amended on April 13, 2016. Defendant Helen filed her Answer to the First Amended Verified Complaint on May 4, 2016. Defendants Mei Fei and Hsiao Jung filed their Answer to the First Amended Verified Complaint on October 20, 2016.

## FINDINGS OF FACT

By a preponderance of the evidence, the Court makes the following findings of fact:

1. Shang-Ho Wu Yu initially held title to units #601 and #705 of Agana Bay Condominium. When she died on February 13, 2013, title passed to her four children: Helen, Mei-Fei, Hsiao Jung, and Hsiao Wei. Each sibling received a one fourth undivided interest in the properties.

2. Helen was appointed Administratix of the Estate during the probate proceedings for the Estate of Shang-Ho Wu Yu (PR0098-13).

3. After title for the condos was recorded at the Department of Land Management, Helen contacted her siblings, Mei Fei, Hsiao Jung, and Hsiao Wei to discuss the units and whether they should be leased or sold. In her May 28, 2014, June 2, 2014, and June 3, 2014 emails, she requested that each sibling advise in writing how he or she would like to proceed.

4. On June 5, 2014, Hsiao Wei used You Rong Yu's email account to send a message to Helen in which he advised her that he was agreeable to renting only one of the two units.

5. On June 7, 2014, Helen advised her siblings via email that both units would be rented. She also indicated that she would charge a $30.00 monthly fee to manage each unit.

6. On June 24, 2014, Hsiao Wei emailed Helen to again indicate that he is only agreeable to leasing unit #601, and not unit #705. He further added that he was only agreeable to leasing unit #601 if it were done with the assistance of Christopher Felix at Century 21.

7. Also on June 24, 2014, Helen emailed Mei Fei, Hsiao Jung, and Hsiao Wei, and advised them that Century 21 will charge a management fee of $150.00 per month and if they can decrease their fee to $50.00 per month, she will agree to it. She also discussed the items that had to be either fixed or replaced in the units.

8. On June 26, 2014, Helen emailed Mei Fei, Hsiao Jung, and Hsiao Wei, advising them that a special assessment fee for the condos is due. She discussed a bathtub issue for unit #705 and requested that they all pay for their "1/4 expense of common area fee, property tax fee, court/attorney probate case fee and others, repair fee, assessment fee, etc."

9. That same day, Hsiao Wei sent an email to all parties in which he stated that if unit #705 is occupied by tenants, then "once I return to Guam, I have the right to and will prosecute the tenant."

10. Helen responded via email on June 27, 2014, advising Hsiao Wei that if he prosecutes the tenants in units #601 and #705 upon his return to Guam, she will take legal action against him, including the filing of a lawsuit and pursuit of a restraining order against him. Later that day, Helen sent an email to all parties stating that after considering each owner's answer on how to handle the units, they would be rented out.

11. In July 2014, Hsiao Wei and his wife Suping Xu divorced. Hsiao Wei had previously been using his wife's email account to communicate with the other parties. After this date, Suping Xu would sometimes provide Hsiao Wei with communications from the other parties, but sometimes he would not receive them at all. He did not create his own email account until 2017.

12. Sometime in early 2015, Helen attempted to apply for a business license for the units. When she discussed her case with the officials at Department of Revenue and Taxation, it was recommended that each sibling apply for a business license on their own.

13. On February 11, 2015, Mei Fei and Hsiao Jung issued powers of attorney to Helen to act as their agent regarding the condos. These powers of attorney to act in land were never filed at the Department of Land Management.

14. Defendants Mei Fei and Hsiao Jung ratified all acts and omissions of Helen with regards to the condos.

15. Helen obtained business licenses for herself, Mei Fei, and Hsiao Jung for the period of March 2015 through June 30, 2015 and for the period of June 2015 through June 2016.

16. On July 30, 2015, Helen sent an email to Suping Xu's email address, hoping to reach Hsiao Wei. In the email, Helen asked Hsiao Wei to apply for a business license. Helen sent another email to this effect on November 1, 2015.

17. Plaintiff filed complaints with the Government of Guam Department of Revenue and Taxation, alleging: (i) Defendants leased the condos without a proper business license; and (ii) Scott Campbell charged a commission for leasing units without a contract signed by all four owners of the condos.

18. After Plaintiff initiated this lawsuit, Defendants provided Plaintiff with an accounting of the income and expenses for the rental of the condos. Plaintiff accepts the rendered accounting with the exception of four objections:

   a. Alleged charges for probate expenses in PR0098-13;

   b. Any commissions paid to Scott Campbell, *et al.* for leasing the condos;

   c. Fees charged by Helen for real estate management;

   d. Expenses for Defendants' business licenses.

19. The tenants in unit #601 moved out in March 2017. The tenants in unit #705 moved out in July 2017.

20. The rental funds for the property were used to pay for maintenance of the condos, including the assessment fee, common area fee, property taxes, etc. Leftover money is paid to the siblings. To date, each sibling has received a total of approximately $16,000.00.

21. Plaintiff cashed the rent checks sent to him, but marked the checks "under protest."

22. Both units are currently vacant, and Helen pays a power bill each month to keep the air conditioning running in order to prevent mold. The monthly bill for each unit is approximately $40 to $50.

## CONCLUSIONS OF LAW

### Plaintiff is a tenant in common with Defendants.

Under the laws of Guam, the ownership of real property by several persons is joint interest. 21 GCA § 1214. Absent a written agreement among owners providing otherwise, co-owners have certain rights in the real property they own. Although tenants in common can own unequal interests, unless agreed otherwise in writing, all tenants in common have an equal right to possess and use the entire jointly owned property. Cardoza v. Machado, 46 Cal. App. 2d 809, 811 (1941). This being so, such a tenant has no right to exclude his co-tenant from any portion of the common lands.

**Defendants wrongfully leased condos without Plaintiff's express approval**

Defendants leased unit #705 despite an express objection by Plaintiff. Additionally, Defendants leased unit #601 with the assistance of Scott Campbell of Coral Sea Realty, which Plaintiff did not agree to. It is settled law that a co-tenant has no power to lease an entire estate, or any specific portion of the estate, unless he is authorized to do so by all other tenants. Carr v. Deking, 52 Wash. App. 880, 884 (1988); Chosar Corp. v. Owens, 235 Va. 660, 663 (1988); Brewer v. Washington RSA No. 8 Ltd. P'ship, 145 Idaho 735, 738-9 (2008).

**Ouster**

The Supreme Court of California held in Zaslow v. Kroenert, 29 Cal.2d 541, 548 (1946) that "an ouster, in the law of tenancy in common is the wrongful dispossession or exclusion by one tenant of his co-tenant or co-tenants from the common property of which they are entitled to possession. The ouster must be proved by acts of an adverse character, such as claiming the whole for himself, denying the title of his companion, or refusing to permit him to enter." Additionally, intent is a critical element in establishing an ouster. Wood v. Henley, 88 Cal.App. 441, 454 (1928).

Defendants argue that there is insufficient evidence to show that Defendants intended to oust Plaintiff. The court notes that communications among the parties have been strained during the relevant period. Plaintiff's lack of a personal email account separate from that of his ex-wife is partly to blame for the problems in communication. However, Plaintiff told Defendants unequivocally that he refused to lease unit #705, and that he refused to use the assistance of Scott Campbell in leasing unit #601. Defendants leased the units over his objections, and in doing so prevented Plaintiff from exercising his right to enter the unit. Further, Defendants acted with intent to deprive Plaintiff of his property rights in the units.

**Plaintiff's share of rents**

Plaintiff acknowledges his receipt of his share of rents, but contends that he is still owed damages due to amounts being taken from his share of the profits to pay for various expenses associated with maintaining and renting the units. The Court notes that Plaintiff would have been liable to pay his share for certain fees associated with maintaining the units regardless of whether they had been leased. Plaintiff cashed the checks he received from Defendants under

protest in order to preserve his right to file suit, but this does not change the fact that he received the correct amount to which he was entitled.

**Scott Campbell's contract**

Despite Plaintiff's express objections, Defendants entered into a contract with Scott Campbell of Coral Sea Realty to lease the condos. The contract with Scott Campbell was reasonable and necessary in order for the parties to lease the units. Plaintiff paid the same amount as each Defendant paid for this contract, and Plaintiff benefited from this contract in that he received his share of the profits from renting the units. Plaintiff is therefore not entitled to any damages as a result of this contract being entered into without his consent.

**Disgorgement for management fees paid to Helen**

Plaintiff seeks damages based upon the fees paid to Helen for her management of the units. These fees were taken out of the checks paid to the four co-tenants from the profits earned by the rental units.

21 GCA § 104102(d)(1) provides that the licensing requirements for a real estate broker do not apply to a person who, as an owner or lessor of the property, sells, rents, or leases real estate or collects rents for the use of the real estate. This is further supported by 21 GCA § 104105, which states that this division is inapplicable to persons who are dealing with their own property. For this reason, the Court disagrees with Plaintiff's position that Helen was acting illegally in leasing the units without a real estate license.

Helen charged a management fee of $30 per month for each unit. This fee was for management work, such as dealing with rental tenants, obtaining repairs, and collecting rent on behalf of the other co-tenants. These activities were necessary in order for the units to be leased and were expected in the normal course of business. Plaintiff benefited from the management services and the fee was reasonable. The Court finds that Plaintiff is not entitled to disgorgement of the management fees paid to Helen.

**Disgorgement for the business license fees**

The Defendants obtained business licenses to engage in the leasing of the units. These licenses required fees, which were paid for out of revenue generated from renting the units. Plaintiff did not agree that these licenses be obtained and argues that he should not be obligated to pay for them. As with the Helen's management services, the units could not be leased without

the obtaining of business licenses and Plaintiff therefore benefited as a result of Defendants obtaining these licenses and paying the necessary fees. The Court finds that Plaintiff is not entitled to disgorgement of the business license fees.

**Fraud**

The elements of fraud are: "(1) a misrepresentation; (2) knowledge of falsity (or scienter); (3) intent to defraud to induce reliance; (4) justifiable reliance; and (5) resulting damages." Transpacific Export Co. v. Oka Towers Corp., 2000 Guam 3 ¶ 23.

Plaintiff alleges that Helen's threats of criminal prosecution and civil litigation were misrepresentations and that Helen's testimony that she did not intend to act on these threats proves her knowledge of their falsity. While Plaintiff had a right to his 25% interest in the units, he did not have a right to harass anyone living in either unit. His correct remedy would be to use the judicial process to seek a remedy. Defendant Helen was therefore not making a misrepresentation when she stated that she could inform authorities if Plaintiff harassed the renters of the units.

Further, Plaintiff argues that he justifiably relied upon such threats, as he testified that Chinese and Taiwanese police would beat people and make them disappear. This argument fails, as Plaintiff's attempts to contact and harass the renter demonstrates that he did not rely upon Defendants' statements.

Lastly, Plaintiff argues that he suffered damages as a result of this alleged fraud, as he was prevented from exercising legal action with regards to the units. However, Plaintiff received checks from the Defendants to compensate him for what he was entitled based on his ownership of the units. Plaintiff cashed these checks under protest in order to preserve his right to file suit, but this does not change the fact that he received the correct amount to which he was entitled. Plaintiff has not otherwise demonstrated that he was subject to damages as a result of Defendants' alleged fraudulent conduct.

**Punitive Damages**

Guam law requires evidence of oppression, fraud, or malice to award punitive damages. 20 GCA. §2120 states that in an action for breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and

by way of punishing defendant. Further, oppression, fraud, or malice must be proven by 'clear and convincing' evidence. <u>Spinks v. Equity Residential Briarwood Apartments</u>, 171 Cal. App. 4th 1004, 1052 (2009).

Having already found that Defendants have not engaged in fraud, the Court will now examine whether Defendants have engaged in oppressive or malicious conduct towards Plaintiff. Oppression has been defined as "despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." <u>Park v. Mobile Oil Guam, Inc.</u>, 2004 Guam 20, fn. 4. Malice is conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard to the rights or safety of others. <u>Id.</u> The Court finds that Defendants' actions infringed upon Plaintiff's property rights in the units, but that Defendants made a reasonable effort to involve Plaintiff in the process of leasing the units. Defendants' actions did not constitute either oppression or malice.

Plaintiff argues further that he is entitled to punitive damages from all parties based on the doctrine of *respondeat superior*. Plaintiff contends that, in engaging in tortious conduct, Helen was acting as an agent for the other Defendants, who were acting as principles. Plaintiff's argument that he is entitled to punitive damages is based upon his complaint for fraud, which he has not proven by a preponderance of the evidence. Because Plaintiff has not proven that Helen's conduct is fraudulent, he is therefore not entitled to punitive damages from the other Defendants based on *respondeat superior*.

**Partitioning by sale**

Plaintiff seeks a partition of the property with proceeds of the sale to be distributed to Plaintiff and the Defendants based on their equal ownership shares. Partition is provided by 7 GCA § 24401, which provides the following:

> **§ 24401. Who May Bring Actions for Partition.**
> When several co-tenants own real property as joint tenants, or tenants in common … an action may be brought by one or more of such persons . . . for a partition thereof according to the respective rights of the persons interested therein, and for a sale of such property, or a part thereof, if it appears that a partition cannot be made without great prejudice to the owners.

The subject property is comprised of two condos. It would be of great prejudice to the owners for any partitioning of the condos among the four co-tenants. Therefore, Plaintiff is entitled to the remedy of sale as provided by § 24401. Both parties have consented to partition by judicial sale, and will now have sixty days to decide which, if not both, of the units are to be sold. This Court will hold further proceedings if the parties cannot agree as to the sale of the units.

**Attorney's fees**

Under the American Rule, "parties bear their own litigation expenses, including attorney's fees." Fleming v. Quigley, 2003 Guam 4. There are several recognized exceptions to this rule which allow for the payments of fees if it is 1) authorized by statute, 2) authorized by contract, or 3) allowed in judicially-established equitable circumstances. Id. None of these three exceptions are applicable to this case.

Plaintiff argues that he is entitled to attorney's fees for partition pursuant to 7 GCA § 24445, which reads as follows:

> **§ 24445. Costs of Partition.**
> The costs of partition, including reasonable counsel fees, expended by the plaintiff or any of the defendants, for the common benefit, fees of referees, and other disbursements, must be paid by the parties respectively entitled to share in the lands divided, in proportion to their respective interests therein, and may be included and specified in the judgment... 7 GCA § 24445.

The Court reads this section as only applying to a partition of the property. Because the units are to be sold in this case, Section 24445 does not apply.

**ORDER**

Both parties have consented to a partition by sale. Parties are given sixty days to determine which unit, if not both, is to be sold. The Court will hold further proceedings if the parties cannot agree. Neither party is entitled to any additional damages or attorney's fees.

SO ORDERED, this _____ day of _____ 2017.

_____
HONORABLE MICHAEL J. BORDALLO
Judge, Superior Court of Guam

Page **9** of **9**